IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Plaintiff,

v.                                                      No. CV 15-1156 WJ/KK

SHELLY ALLEN, individual and as
Next Friend of JOSIAH ALLEN, and as
Surviving Spouse of JOSHUA ALLEN, Deceased;
and JANE DOE, Personal Representative of
the Wrongful Death Estate of JOSHUA ALLEN, Deceased,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANTS' MOTION TO DISMISS

THIS MATTER comes before the Court on Defendants' Motion to Dismiss for Want of Jurisdiction (**Doc. 7**), filed February 17, 2016. Having considered the written submissions of the parties and the applicable law, the Court finds that Defendants' Motion is not well-taken. Therefore, it is **DENIED**.

### BACKGROUND

On February 24, 2014, Decedent Joshua Allen was driving a 2005 Toyota Sienna in El Paso, Texas when he was involved in a vehicle collision with Jesus Barrera. As a result of the accident, both drivers suffered fatal injuries. Joshua Allen's son, Josiah Allen, was also in the vehicle but survived the collision. On April 3, 2015, Defendant Shelly Allen ("Ms. Allen"), individually and as next friend of Josiah Allen and surviving spouse of Joshua Allen, filed a

lawsuit in the County Court No. 3 of El Paso County, Texas against the Estate of Jesus Barrera, State Farm Mutual Automobile Insurance Company, and other defendants.

Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") provided automobile insurance coverage to both Shelly Allen and Joshua Allen, insuring the 2005 Toyota Sienna involved in the collision under Policy Number 093-1336-A08-31 ("the 093 Policy"), as well as a 2003 Volkswagen Beetle under Policy Number 069-4667-C07-31D ("the 069 Policy"). For each policy, State Farm provided relevant coverage of bodily injury liability of up to $50,000 for each person. Jesus Barrera was insured by Nationwide Insurance Company, which provided relevant coverage of bodily injury liability in the amount of $100,000. State Farm alleges that Defendants have recovered the $100,000 policy liability limit from Nationwide. If Defendants can "stack" the two State Farm coverage policies, they could recover $100,000 ($50,000 under the 093 Policy and $50,000 under the 069 Policy) for bodily injury caused by an uninsured/underinsured motorist. The New Mexico Uninsured Motorist Statute, N.M. STAT. ANN. § 66-5-301, contemplates that any applicable uninsured/underinsured motorist coverage is to be offset by the amount of liability coverage recovered by the insured. Therefore, State Farm, in its Complaint for Declaratory Relief, alleges that it has no duty to pay uninsured/underinsured motorist coverage to the Defendants because State Farm is entitled to an offset of the amount of liability coverage recovered by the Defendants from Nationwide. Because Defendants contend that State Farm is not entitled to this offset, a genuine controversy exists. State Farm requests that this Court enter judgment in its favor declaring that State Farm has a right to offset the payment amounts made by Nationwide against the policy limits of the State Farm uninsured/underinsured motorist coverage available.

State Farm filed its Complaint for Declaratory Judgment (**Doc. 1**) on December 21, 2015. Defendants filed their Answer and Motion to Dismiss (**Doc. 7**) on February 17, 2016. Plaintiff filed its Response (**Doc. 10**) on March 2, 2016, and Defendants filed their Reply (**Doc. 16**) on March 21, 2016.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a case for failure to state a claim upon which relief can be granted. Rule 8(a)(2), in turn, requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court must accept all the complaint's factual allegations as true, the same is not true of legal conclusions. *See id.* Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. "Thus, in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

A trial court has discretion to determine whether or not to entertain a declaratory judgment action. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 279 (1995) (citations omitted). "[U]nlike coercive actions, declaratory actions do not invoke the federal judiciary's virtually unflagging obligation to exercise its jurisdiction." *United States v. City of Las Cruces*, 289 F.3d 1170, 1182 (10th Cir. 2002) (internal quotations and citations omitted). The Tenth Circuit has outlined several factors a court should consider when deciding whether to exercise jurisdiction

3

over a declaratory judgment action including whether a declaratory action: (1) would settle the controversy; (2) would serve a useful purpose in clarifying the legal relations at issue; (3) is being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata*; (4) would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there exists a better or more effective alternative remedy. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994).

## DISCUSSION

Defendants, in their Motion to Dismiss, note that while State Farm has brought this case pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201, the act "does not confer jurisdiction upon federal courts, so the power to issue declaratory judgments must lie in some independent basis of jurisdiction." *Cardtoons. LC v. Major League Baseball Players Ass'n*, 95 F.3d 959, 964 (10th Cir. 1996) (citations omitted). Defendants note that for purposes of federal diversity jurisdiction, the matter in controversy must exceeds the sum or value of $75,000. *See* 28 U.S.C. § 1332(a). In short, Defendants argue that in the underlying litigation in Texas state court, Ms. Allen brought suit demanding only the amount of uninsured/underinsured benefits she is entitled to pursuant to the 093 Policy, without ever referencing the 069 Policy. Therefore, the only amount in controversy in this case is $50,000, well short of the greater-than-$75,000 amount in controversy requirement for federal diversity jurisdiction. Defendants cite to *State Farm Mut. Auto. Ins. Co. v. Narvaez* for the proposition that "[w]here insurance coverage is denied, the maximum amount in controversy is the maximum limit of the insurer's liability under the policy." 149 F.3d 1269, 1271 (10th Cir. 1998). Defendants argue that the maximum limit of State Farm's liability under the policy is $50,000. As it is State Farm's obligation as the party

seeking to assert federal court jurisdiction, Defendants argue that State Farm's representation that $100,000 are in controversy has no basis in fact.

Defendants note that even if this Court were to find that State Farm had satisfied the amount in controversy requirement, the five factors from *State Farm Fire & Cas. Co. v. Mhoon* weigh against this Court deciding State Farm's request for declaratory judgment. These factors entail the court asking: "[1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race to *res judicata*'; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective." 31 F.3d 979, 983 (10th Cir. 1994) (citation omitted). Defendants argue that the ongoing Texas litigation provides a ready forum in which all disputes can be resolved, as State Farm has therein asserted identical positions as in this case.

State Farm argues that the amount in controversy is measured by the value of the object of the litigation. *See City of Moore, Okla. v. Atchison, Topeka, & Sante Fe Ry. Co.*, 699 F.2d 507, 509 (10th Cir. 1983). The Tenth Circuit follows the "either viewpoint rule," which "considers either the value to the plaintiff or the cost to the defendant" of declaratory relief as the measure of the amount in controversy. *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006). Under the two policies in question, State Farm argues that it provided $100,000 in stacked coverage for bodily injury caused by an uninsured/underinsured motorist. As the Supreme Court held when deciding whether the amount in controversy has been met, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Saint Paul*

*Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) (footnote omitted). State Farm asserts for diversity jurisdiction purposes that the amount in controversy is $100,000 because the maximum amount of "stacked" underinsured motorist benefits available is $100,000.

    Turning to its request for declaratory judgment, State Farm argues that all of the *Mhoon* factors weigh in favor of this Court exercising jurisdiction. First, the Declaratory Judgment action will settle the question of whether State Farm is entitled to the $100,000 offset once Defendants receive $100,000 from the liability insurer for the tortfeasor. A finite set of facts will ultimately determine the issue of whether State Farm is entitled to the offset. Second, State Farm argues that the Court's exercise of jurisdiction will clarify the legal relationship between the Defendants and State Farm, and will not affect any issues in the underlying litigation, such as whether the underlying defendants are liable for tort claims asserted against them. Third, State Farm argues it is not using this remedy as a procedural fence or to provide an area for a race to *res judicata*, as the complex underlying litigation makes it unlikely that the sole issue between State Farm and the Defendants will be addressed in a timely manner, and the Declaratory Judgment Act "enables parties uncertain of their legal rights to seek a declaration of rights prior to injury." *Kunkel v. Continental Cas. Co.*, 866 F.2d 1269, 1274 (10th Cir. 1989). Fourth, Plaintiff asserts that this Declaratory Judgment action will not increase friction between the federal and state courts, and fifth, no superior alternative remedy exists.

    In their Reply, Defendants restate that they have never demanded more than $50,000, the amount of uninsured/underinsured benefits pursuant to the 093 Policy, nor has State Farm even paid any amount under the 093 Policy, much less the 069 Policy. Defendants also argue that State Farm is attempting to turn New Mexico's insurance stacking principles on their head, as they were created to prevent insurers from taking premiums on multiples policies and then

denying benefits where an insured was injured by an uninsured/underinsured driver. The policy language allows Ms. Allen to make a claim, but does not mandate it. Turning to the *Mhoon* factors, Defendants argue that State Farm is seeking an offset it is not entitled to, and that this Court should decline jurisdiction as the Texas state court is competent to interpret the policy language.

The Court agrees with State Farm that it has properly alleged an amount exceeding the $75,000 amount in controversy requirement, as State Farm has shown "that it does not appear to a legal certainty that they cannot recover the jurisdiction amount." *Woodmen of World Life Ins. Society v. Manganaro*, 342 F.3d 1213, 1216 (10th Cir. 2003) (citations omitted). As this is a declaratory relief action, the amount in controversy is determined by the "either viewpoint rule," which "considers either the value to the plaintiff or the cost to the defendant" of the declaratory relief as the measure of the amount in controversy. *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006). In essence, the main contention is whether the fact that Defendants have brought suit in the underlying litigation demanding only the $50,000 of uninsured/underinsured benefits pursuant to the 093 Policy precludes State Farm from asserting that the total amount in controversy in this litigation is $100,000, given that State Farm provided insurance coverage to Shelly and Joshua Allen under both the 093 Policy and the 069 Policy.

While this case does present the unique situation of an insurance company asserting that it is entitled to pay the insured $100,000, while the insureds argue that they are only entitled to receive $50,000, the Court does not believe this changes the analysis. From the pleadings and arguments of the parties, it appears to the Court that while Defendants are in the process of recovering the $100,000 liability limits available under Jesus Barrera's Nationwide policy, Defendants have not yet done so. Were the Defendants hypothetically only able to recover

$20,000 from the Nationwide policy, the Court suspects that Defendants likely would in turn assert that they were entitled to receive $80,000 from State Farm, that is, the difference between what they recovered from the Nationwide policy and $100,000 liability limit by stacking their 093 Policy and 069 Policy. In this hypothetical, there is no doubt that the amount in controversy requirement would be satisfied for diversity jurisdiction purposes. Defendants agree that it is State Farm's obligation to establish the Court's jurisdiction. Yet at the same time, they assert that "[t]hus far in this case, Defendants have only made demand upon State Farm for payment of $50,000 based upon the Toyota [093] policy, which to date State Farm has never paid." (**Doc. 7**, at 22–23). In the Court's view, Defendants conflate that while this case is closely related to the underlying litigation in Texas state court in which they are Plaintiffs, as Defendants in this case, they cannot draw the contours of the amount in controversy here based upon the amount in controversy they assert in Texas state court.

As Defendants cite in their Motion to Dismiss, in evaluating an uninsured/underinsured motorist claim, "one must determine both the tortfeasor's liability limits and the insured's total UM coverage, which may include multiple stacked policies." *State Farm Mut. Auto. Ins. Co. v. Safeco Ins. Co.*, 298 P.3d 452, 454 (N.M. 2013). State Farm has shown that the insured's total uninsured/underinsured coverage, including the multiple stacked policies, is $100,000, and thus, is sufficient to satisfy the amount in controversy requirement. Defendants are correct that in bringing suit, Ms. Allen may assert a claim under the 093 Policy and forego one under the 069 Policy, and that decision is solely her decision. But here, Ms. Allen is not bringing suit. In following the "either viewpoint rule," State Farm is at risk of being exposed to the full $100,000 stacked policy if Defendants are unable to recover from Nationwide.

Additionally, while the Court agrees with Defendants that permitting the stacking of insurance policies was primarily created to prevent insurers from taking premiums on multiple policies and then denying benefits where an insured was injured by an uninsured/underinsured driver, none of the case law cited by Defendants stands for the proposition that insurers are not permitted to use claim stacking in determining the amount in controversy or their potential exposure to liability. While the insured is typically the party seeking to stack policies rather than the insurer, the Court is not aware of any law standing for the proposition that State Farm is precluded from using stacking principles to establish the amount in controversy requirement for diversity jurisdiction.

Finally, a trial court has the discretion to determine whether or not to entertain a declaratory judgment action. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 279 (1995) (citations omitted). The *Mhoon* factors outline whether or not a court should exercise jurisdiction over a declaratory judgment action, including whether a declaratory action (1) would settle the controversy; (2) would serve a useful purpose in clarifying the legal relations at issue; (3) is being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata*; (4) would increase friction between federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there exists a better or more effective alternative remedy. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994). In assessing these factors, the Court finds that deciding this Declaratory Judgment action would settle a controversy and serve a useful purpose in clarifying the legal relations, is not being used for some improper purpose, would not increase friction between the federal and state courts, and is the fastest and most effective remedy.

Accordingly, for the above stated reasons, Defendants' Motion is **DENIED**.

    **SO ORDERED**

_____
UNITED STATES DISTRICT JUDGE